50 NEW YORK SUPPLEMENT (Sup. Ct.
and 84 New York State Reporter.

We agree with the learned assistant corporation counsel that it was not necessary for plaintiffs to prove the actual payment of money by the city authorities for the support of the child; but that the defendant's neglect to pay the sum ordered to be paid for such support was a breach of the undertaking, and the measure of the damages was the sum ordered to be paid, and which was withheld at the time of the commencement of the action, with interest thereon. Cr. Code, § 883. So far as the release purports to free the said defendant from the obligations of the bond, its introduction was entirely inadmissible. The bastardy undertaking was made to the people of the state of New York, for the purpose of insuring the support of the child. It was not given for the support of the mother. She is not a party to it, and she has no interest in it. She cannot, in any way, affect it, either in its operation, force, or continuance. See People v. Shulman, 8 App. Div. 517, 40 N. Y. Supp. 779. The power to compromise is vested solely in the commissioners of charities; and, as this function is judicial in its nature, as distinguished from a purely ministerial duty, it could not effectively be transmitted to another person. The evidence, sought to be introduced by defendant, that one Blake, who appears to have died before the trial, and of whose official position or authority no evidence is offered, had verbally consented to the release, was clearly inadmissible. No effort is made to prove that the commissioners of charities had ever sanctioned the release, or even knew anything about it.

With regard to the exclusion of the evidence, offered by defendant, to prove that he had paid $50 to the mother of the child, it must be held that there was no error in such ruling. The defendant paid the money, if at all, at his own risk, and with such payment the plaintiffs are not at all concerned. Defendant's obligation was to pay to the commissioners of charities the sum of $2.50 a week, and he cannot avoid that obligation by paying $50 to another party, without authorization by the commissioners of charities, even if that other party was the mother of the child. See People v. Shulman, supra.

It therefore follows that the judgment appealed from should be affirmed, with costs. All concur.

---

(23 Misc. Rep. 145.)

DARCEY v. STEGER.

(Supreme Court, Appellate Term. March 28, 1898.)

LEASE—LIABILITY FOR WATER RENTS.

In a lease of premises from plaintiff to one S., the clause requiring the lessee to pay the water rents was stricken out. The lessee, after taking possession, put in certain bar fixtures, which necessitated the use of Croton water, and thereafter, with the written consent of the lessor, he assigned the lease to defendant, the assignment and the consent being silent upon the subject of water rents. In an action turning on the respective liability of the parties to pay the water rents, *held*, upon the facts, that defendant had a right to assume, when he took the assignment, that no obligation was imposed on him to pay such rents.

Appeal from Eighth district court.

'Action by Bridget Darcey against William Steger. Judgment for plaintiff, and defendant appeals. Reversed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

H. F. Lippold, for appellant.
J. E. Duross, for respondent.

GILDERSLEEVE, J. This case is submitted on the following agreed state of facts and question of law, viz.: The plaintiff leased certain premises to one Steuernagel, who subsequently assigned the lease to the defendant, with the written consent of the plaintiff; and "that since the lease was made, and the lessee (Steuernagel) went into possession of the premises, the lessee put in certain bar fixtures, which necessitated the use of Croton water; and that, therefore, the assignee of the lease (defendant) having come into possession of that property, under an assignment, and consent by the landlord, and the transfer of that lease, the question is whether the assignee became liable for the Croton water rents, under that lease and assignment, to the amount of $23."

Both lease and assignment have been put in evidence. In the lease the clause as to the tenant's paying the water rents is stricken out. When the lease was assigned, nothing, so far as the record shows, was said as to who was to pay the water rents; and neither the assignment itself, nor the written consent of the plaintiff to such assignment of the lease, makes any reference whatever to water rents. Nothing appears in the record to show any understanding between the plaintiff and Steuernagel as to water rents, except so far as the erasure of that clause in the lease is concerned. All we have to go by is the lease, the assignment, and the agreed state of facts, above set forth; for the little testimony that was taken is practically incorporated in that statement of facts. So far as the record shows, it appears that defendant had a right to assume, when he took the assignment of the lease, that no obligation was imposed upon him to pay such rents. The law imposes the obligation to pay the tax upon the landlord, and, unless she and the tenant especially contracted that the latter should pay such tax, no obligation rested upon him to do so. See McAdam, Landl. & Ten. (2d Ed.) § 89. The question suggests itself: Why did not the landlord make arrangement for the payment of the water rents at the time she consented, in writing, to the assignment, if she wished to have the tenant assume that obligation? But, as we have seen, she remained, so far as the record shows, perfectly silent upon this point, although she must have known that no obligation to pay such tax was imposed upon the tenant by the lease. As we have said, there is nothing in the record to indicate that defendant had the slightest reason to suppose, when he took the assignment, that he would be called upon to pay the water rents.

Having reached the conclusion that, for the reasons above stated, the judgment should be reversed, it becomes unnecessary to discuss the other points raised by the appellant upon this appeal. We may add that, while it clearly appears that the judgment appealed from has

.been paid in full by the defendant, we cannot recognize the application for an order for restitution, made by the counsel upon the argument, as a compliance with the provisions of section 3058 of the Code of Civil Procedure, and direct the return of the money paid upon the ·erroneous judgment. "Six days' notice of an application for an order for restitution must be given."

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.